Mr. Justice Gantt
delivered the opinion of the court :
On the first ground it need only be remarked that the superintendency of this court, and the high discretion with which it is invested, extends to all inferior jurisdictions, and is to be exercised when they exceed the bounds assigned to them, either by assuming jurisdiction where none is given, or exceeding it in any stage of their proceedings contrary to law. The case of the State vs. John Hudnall and others-, reported in 2 Nott McCord, 419, among several others decided by this court, is illustrative of the correctness of this position.
*401 In that case, one of the grounds relied vn was, -¡bat iho jurisdiction of magistrates and freeholders qvend il-c carter before them was final and conclusive, r 4 that alive sentence, tins court could not intcrficie ! > \ robibition to suspend its execution; but it was deUvniion;' tiiat the prohibition had been propeüy awarded. The. following clause in the act of the 22d March,, 1785, is reb.,;! on ?.s giving to the commissioners an authority so overwhelming as not to be controlled by this court. “ The said board of commissioners aro hereby authorized to declare and ascertain when the same is not ascertained by law, or when doubts may arise concerning the same, what inhabitants are liable to work on anyroad of-part of a ro'«J in their respective parishes and districts.”, The conclusion to be drawn from this clause is, ibat where the law uoes ascertain the cxeinption, then the commissioners have no power to declare the exempted persons liable to work on a road or part of a road.
If Mr. Harrington, therefore, as clerk of the court of Newberry district, was by law exempted fro ¡o working on the roads, and this exemption properly p!<-.n!ed v-b?n summoned before the commissioners, (a fact \vhicb is net denied,) the enforcement of a sentence to collect the fine imposed under a distress warrant, would be illegal and oppressive.
It remains to examine the second ground, whether Mr, Harrington was by law excused from working on the roads. The 9th clause of the act of 1789, (P. prescribing the duties of clerks, declares, “ that all and every person or persons shall and may, at all limes of the day, from 9 o’clock in the morning till 4 o’clock in the afternoon, (Sunday excepted,) have free access to anjr of the clerks offices in the respective districts.”
The 6th clause prescribes the oath of office — “ well and faithfully to do and perform the several duties enjoined by laws now passed, or which shall hereafter be, as clerk of the disk let court.” The 12th clause declares, that “if any of the clerks of the court aforesaid shall omit or ne *402 gleet to do his duty in the premises, he shall forfeit aná' pay the sum of £ 200, the one moiety to the party or parties aggrieved, and the other moiety to him or them who shall sue for the same in any of the district courts of this state. He. is required to enter into bond with three good and sufficient securities in JE 2000 for the just and faithful discharge of his duty, and is to resido at ti e place where the court is held. The conclusion to be drawn from any correct view of these clauses of the act is, that the law has so specifically appropriated the time of the clerk for the performance of the duties required of him, that ho would act in direct violation of the law were he to leave his office and go to work on the road. As keeper of the records of the district, the most ready access should at all times be afforded to those who have business to transact in his office. Exigences may arise when the mischief and injury to individuals would be incalculable, if the clerk might elect to leave his office and go to work on the road. As, therefore, the duties prescribed by law to the clerk, are altogether incompatible with what was required of him by the commissioners, and both being personal duties, it is the. opinion of this court that the commissioners were properly restrained by prohibition from enforcing their sentence,
TBe motion to set aside the order made at Chambers,. must fail.
Justices Nott, Huger and Johnson, concurred.
Mr. Justice Richardson!
The question submitted, is whether a clerk of the Ciréuit Court is exempted by law, from working on the high: roads, &c. and if so, whether a prohibition shall issue, to save him from the lawful fine laid by the commissioners of the roads for refusing to work, when regularly summoned so to do ?
it must be borne in mind, that if the occupation of the clerk, in his office, was offered as a mere reasonable excuse for not obeying the summons upon the particular occasion, then a prohibition could not be issued. For in or *403 ¡der to authorize the issuing of such a process, it must appear that the commissioners of the roads have acted not merely unreasonably in rejecting a good excuse, but that they have undertaken to fine an officer, who is altogether exempt from the performance of the duty required, upon that, and every other occasion, without any appeal to their judgment or discretion. Now is the clerk thus privileged ? I hold the negative, and support it by the following plain and allowed principles. Every citizen is bound, in return for the prolection received from his government, to make all those pecuniary contributions and do all those persona! services which are required of him, in common with his fellow citizens; and in default of rendering such services, to pay the fine or penalty fixed by law, which is the usual, if not the only practical mode of exacting personal services. Without this principle of obedience, “no government could be stable or permanent: And of all services, those of working on the roads, as well as of doing patrol and military duty, are the most interwoven with our habits, laws and necessities, since the fi.rst settlement of South Carolina. From the performance of patrol duty, there are a few persons expressly exempt; from militia ■duty, many ; and from working on the roads none, above or below a certain age. But a constructive exemption has never before occurred.
Can an office create any exemption ? Office is the reward of virtue, talents, and fidelity. It exempts the office.1'¡from no civil -duty; but binds him even closer to the constitution and laws, by exacting of him an oath, -in addition to his general obligation, that he will obey, maintain and protect them. There is nothing in the character or duties of an officer which does not co-operate with his oath, to enforce entire obedience to the claims of the law.
He is invited by the expectations of his fellows, he is led by duty,persuaded by gratitude, bound by reward, and he has sealed all these sanctions by an oath to discharge his civil duties. If the officer be necessarily employed in his office at-the moment he is summoned to do personal *404 service elsewhere, lie has then rational excuse ; as any roan mry have upon the unexpected occurrence of momentous business, misfortune or sudden sickness in his family, &c. I-tut excuse is noi exemption.
In iha discharge of his civil and official duties, an officer is iu situation of a man who has contracted to do sever.-, ads, the performance of one is no excuse for his failure in another ; having undertaken to do all, his contract finds him to th.it extent. What would we say to a loan «he folds two officer, as clerk and ordinary, and being inrpe.ndiod for "K'vWvJt.g the duties of the ordinary, should plead that he was occupied altogether in the duties of the clerk, at least b um i! 1o 4 o’clock, by express law. Cvery officer is precis' i • í¡. - hat situation ; he is a citizen and has certain dub.vs to ¡ :¡ -.Vm in common with others, and he hoffis an office, by vu-iur. of which he undertakes to discharge its duties without diminution of the former obligation. In addition to two or three offices, the officer may be a clergyman, and then he has greater and more duties still. But he must discharge the whole of his voluntary obligation to society.
If once the door be opened, by construction, for any officer to escape from the duties of the citizen, the lock is not opened, but the key is useless, and the bolt broken ; and however narrow the first opening, there will never be wanting hands to push it wide, and those will be the bands of the strong, the sagacious, and the interested.— Clerks, sheriffs, ordinarys, judges, magistiatcs, collectors and militia officers, of whom in this regard there is not a class, but of whom it may be said as of the greater Jijaxipse agmen. lithe President of the United States were to claim the privilege of a total exemption from any general civil duty required of the citizens of the state where he resided, I would reply to him — first, throw off the protection of your person and life, your property and character, afforded to you by the state, government, and then you are exempt. This is the tax laid upon your person to be paid in labor. If you cannot do the-labor, the law ad *405 mbs of any reasonable excuse to be judged by the proper’ authority ; but having offered none yon must pay the fine, which is at once the substitute for your labor, and the price of our protection. Your office affords no privilege, and only binds you more closely down to obedience, and you are still liable to be burthened according to the exigence of that locci government, which in return for services, holds her iSeds over your person and property.
The principle which Í have heretofore noticed is perhaps too plain to have required illustration. But as this is the first case in v- ieh o constructive piivilege of exemption from a ry.rnd civil duly has prevailed, Í deem the case of no small importance ; and fearing an unlucky infraction of a fundamental principie, I may be excused for exhausting a little time. But although the general principle is admitió;!, the exception in favor of the clerk is supposed to be warr-!.Ved by ,tho act which directs that clerks shall keep their offices open every day from 9 to 4 o’clock. Now the utmost that can bo made of this enactment is, that the clerk would have a reasonable excuse between 9 and 4 o’clock; and then before 9, and after 4 o’clock, be is not exempt. The very restiiction therefore to 7 hours in the day, proves that he is at least liable at some time ; and it follows that he call have no entire exemption, which is the sine qua non of the prohibition issuing. '
But it appears to me, that taking the act in connection with the principle before relied upon, and it will authorize no such construction. Before the act, the clerk was bound to perform all the duties of his office, and work upon the roads too; and the act lessons neither duty, but merely confines those who call upon the clerk in his office to seven hours; and thereby gives to the clerk an excuse for doing no official business during any other hours of the day. Before the act, he was liable to be called on without restriction of time. But let us exhibit the extent to.which the exemption may be carried, and wé see at pnce Ike danger of allowing the clerk the privilege in any *406 ease. If privileged in this, he must be equally exempt, from every obligation to do any olher personal service out of his office, at ¡cast from nine to four o’clock. But he is required among other civil duties, to make a return personally to the tax collector, of all his taxable property or be fined in a double tax. The collectors office is open from nine to two o’clock. Now if the clerk fail to make his return, shall prohibition go to save him from the-forfeit, because he was kept by the law in his office ? The court sets semi-annually in every district; and it is essential to the discharge of the business that the cleik should attend the court. Now may he reply when called, that he will attend the Judge after four o’clock ; or rather that being required to keep his office open seven hours, he will not attend the court at any hour, as the law makes no fractions of a day. But what is the proper reply to all such claims of the clerk ? It is simply that he is bound to do all the duties required of a citizen of the country, and lie has undertaken to discharge those of a clerk also ; he must then perform both, and if he fail in either, he must pay the penalty for his neglect, unless those who have the power to excuse him will do so. My fears arise from the consequences which will assuredly follow. If the clerk were to be the only officer thus privileged,. I should not greatly regard it, but the peculiar reason given for this exemption will not be regarded. The principle received, will, and must be, that an officer understood to be occupied in his official duties becomes exempt, whether it appeared by statute or common law. Now what officer is not in this situation ? Has a sheriff, or judge, or any of the heads of department more time to spare than the clerk ? I suppose less. Here, though Í am met by the expressions of the act; but something peculiar may be found in every case, and future judges will look to the principle alone, and lay aside the guards and qualifications. The people will not comprehend such subtleties. The practice of the country will be upon the general principle. Other officers will be excused and considered exempt. Some cii> *407 •Cult decisions will be predicated upon the habit of expectations of the country. — Finally, another qualified decision will creep in, and the two will be enough to beget a race of exempts that may put at defiance the principle to which wc are allowing only one harmless exemption. But these little exemptions in favor of individual privileges are as contagious as the leprosy.
Who, that will reflect for a moment upon the wide extent, to which too early adjudications, infracting common law rules have been carried, but will hesitate in making Constructive exceptions to settled principles..
When, at an early period, the judges decided that as a purchaser of a negro without warranty might I’eeover back the price paid if the negro turned out unsound, the decision was in favor of a favorite and valuable species of property ; of the diseases of which too the seller could not be altogether ignorant in general, because the negro has understanding and will tell of his complaint, &c. it was too of that property of which the common law docs not treat; 'and concerning which the civil law is very conversant.— It seemed then somewhat allowable to call in the aid of the civil law in the, particular case, (l Bay, 319.) In the very next case reported, (1 Bay, 474,) we find the judges, fearing least all contracts should be set afloat.
But the new principle had got abroad, and although every new set of judges have deplored its growth, we find the principle deduced from the first decision fairly applied to every species of property ; and every piece of mechanism from a steam-boat down to a Yankee clock.— Had' the first judges been asked how far the innovation was to go, the reply would have been, only to slaves.
This species of property being unknown to the common law, we must look elsewhere for the rules concerning it, as a matter of necessity ; but succeeding judges looked only to the plain principle established, thut full consideration implies a warranty of soundness in every thing. And now under the influence of the principles thus extended, we find practically established in juridical pro *408 ceedings, a species of eminent domain to model, make oí break contracts. It must be admitted that as applicable to a particular species of property, there were great reasons to introduce this doctrine ; and that with all the uncertainty which has followed, there is a moral beauty throughout which almost compels us to pay to it the compliment of the poet to his mistress :
Bausket ¿y Dunlap), for the motion.
O’Neal § Johnson, contra.
if to her lot some female errors fall.
Look in her face and you’ll forget thorn all.”
Turn tó the innovation in the principles of evidence, and ask if the judges, who at an early period, allotted a merchant to prove his accounts by simply swearing to the original entries made by himself, without proving a delivery of tlie goods to his debtor, even foresaw that in direct pursuance of that little innovation afterwards, if the mer'd) ml left the country, all his attorney would have to do was to prove the hand-writing of the merchant, or that whenever the clerk who made the entries has gone off, no matter for what cause, all that was necessary in a court of justice would be to prove the clerk’s hand-writing. 1 would venture, to suppose that this innovation upon the itoetrine of evidence began with the express reservation that Ike merchant must in every instance appear in open court to be cross-examined ; and, that no judge foresaw that his bare hand-writing, or that of his clerk, would he afterwards received in place of his oath. Judge Burke in his last will declares, that but for this modern rule of evidence, he would believe his estaleworfh something, These are solemn warnings to shew the danger of constructive exceptions to settled principles. A principle once surrendered in a particular case is no longer firm, but trembles at every new attack. As then, in treating of great principles, we would willingly say, “ esto perpetua So in resisting the first encroachments, our rule should be “ obsta principiis. ”
“ Stop innovation in its early stage,
Tor when the upstart thing grows strong from age,
“ No time, nor strength of tenets stop its rage.”
Colcock, Justice, concurred with Judge Michardsou.